699 So.2d 1160 (1997)
Michael A. ANDERSON, and Jill Anderson, et al., Plaintiffs-Appellants,
v.
ALLSTATE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 29847-CA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1997.
*1161 Weems, Wright, Schimpf, Hayter & Carmouche by Carey T. Schimpf, Shreveport, and Jeff R. Thompson for Plaintiffs-Appellants.
Richie & Richie by Byron A. Richie, Paul D. Oberle, Jr., Shreveport, for Defendant-Appellee Midland Risk Insurance Company.
Zelda Tucker, Shreveport, for Defendants-Appellees Allstate Insurance Company and Brian Monette.
Before NORRIS, BROWN and GASKINS, JJ.
GASKINS, Judge.
The plaintiffs, Michael A. Anderson, his wife Jill E. Anderson, and their minor daughter Darcy Danielle Anderson, appeal from a trial court judgment which granted summary judgment against them and in favor of their uninsured motorist (UM) insurer, Midland Risk Insurance Company. For the reasons assigned below, we affirm.

FACTS
On August 4, 1994, the Andersons applied to Midland Risk for the minimum automobile insurance allowed under the Motor Vehicle Safety Responsibility Law, La-R.S. 32:900(B)(2). The first page of the two-page insurance application named Andy Anderson as the applicant, designated an effective date of August 4, 1994, and recited a policy period of "8-4-94 to 2-4-95." Andy and Jill Anderson were both listed as vehicle operators. In the center of the second page, the form contained the following provision:
 Uninsured Motorist Coverage Selection or Rejection
Louisiana law requires that no automobile liability insurance policy be issued or
delivered unless it contains an endorsement or provisions undertaking to pay the insured
all sums which he shall be legally entitled to recover as damages for bodily injury from
the owner or operator of an uninsured motor vehicle and permits insured to select or
reject uninsured motorist coverage within limits no less than those set forth in the
Louisiana Motor Vehicle Safety Responsibility Law and up to an amount not to exceed
that provided in the policy of bodily injury liability insurance or to reject the coverage
entirely. After having uninsured motorist coverage offered and explained, I have
voluntarily and intentionally exercised this option as indicated below and as shown on
the other side of this application.
*1162
[ ] I select uninsured motorist bodily injury coverage limits of___/___ which is less
than my bodily injury liability limits.
[ ] I accept uninsured motorist bodily injury coverage in the amount equal to my bodily
injury liability limits.
[x] I reject uninsured motorist coverage in its entirety.
X s/Jill Anderson s/F.F. Van Alstyne
-------------------------------------------------- ------- -----------------------
Signature of InsuredMust be of Majority Age Date Agent Signature
Although the date line in the UM section is not filled in, the date lines of the two sections immediately below (the applicant statement and the agent's statement, which were signed, respectively, by Mrs. Anderson and the insurance agent) both state "8/4/94." Also, the first page of the application shows that the Andersons obtained liability coverage of $10,000/$20,000 bodily injury and $10,000 property damage only; specifically designated as not included were UM coverage, medical pay, comprehensive collision, towing, and rental car reimbursement.
On June 20, 1995, Mr. Anderson was involved in an auto accident. On June 12, 1996, he filed suit against the other driver and his insurer, as well as his own UM carrier, Midland Risk. (Mr. Anderson's wife and daughter also sued as plaintiffs asserting loss of consortium claims.) In its answer, Midland Risk asserted that on August 4, 1994, Mrs. Anderson properly rejected UM coverage under their policy.
Midland Risk filed a motion for summary judgment on the basis that the plaintiffs had waived UM coverage. The Andersons opposed the motion asserting that there were genuine issues of material fact, such as whether a second UM rejection form was filled out. In an affidavit, Mrs. Anderson stated that she was requested by the insurance agency to return to their offices after her initial meeting on August 4, 1994. She returned the next day, August 5, 1994, and signed a "new" UM rejection form. A copy of this form was attached to the plaintiffs' opposition to the summary judgment. The form read as follows:
 UNINSURED MOTORISTS COVERAGE REJECTION
 POLICY HOLDER'S REJECTION OF INSURANCE
 PROTECTION AGAINST UNINSURED MOTORISTS
The undersigned insured hereby rejects Protection Against Uninsured Motorists as
provided in Louisiana Revised Statutes 22:1406 from Policy Number TBA and
subsequent renewals issued by Midland Risk Insurance 
 (Company)
 s/ Jill Anderson Van Alstyne Insurance Agency
---------------------------------------- -------------------------------------------
 (Signature of Named Insured) (Agency Name)
 8/5/94 s/ F.F. Van Alstyne
---------------------------------------- -------------------------------------------
 (Date of Signature) (Agent's Signature)
The trial court granted summary judgment in a written opinion in December 1996. The court found that the UM rejection form was valid. In so ruling, it noted that Mrs. Anderson was not contesting the validity of her signature on the rejection form; nor was there any indication that she did not know what she was signing. Judgment in conformity with this ruling was subsequently signed.
The Andersons appealed.

Summary Judgment
Appellate courts review summary judgments de novo under the same criteria *1163 that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730.
Summary judgments are governed by La.C.C.P. art. 966, which was amended in both the 1996 and 1997 legislative sessions. See Acts 1996, No. 9 of the First Extraordinary Session of 1996 and Acts 1997, No. 483. The effect of these amendments is to establish that summary judgment is now favored. The article presently reads as follow:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.
The amended versions of the article are procedural in nature; therefore, they are subject to retroactive application. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir. 8/21/96), 679 So.2d 477; Curtis v. Curtis, 28,698 (La. App.2d Cir. 9/25/96), 680 So.2d 1327; Short v. Giffin, 96-0361 (La.App. 4th Cir. 8/21/96), 682 So.2d 249, writ denied, 96-3063 (La.3/7/97), 689 So.2d 1372.

UM Coverage
UM coverage is provided for by statute, La. R.S. 22:1406, and embodies a strong public policy. Daigle v. Authement, 96-1662 (La.4/8/97), 691 So.2d 1213; Nesbitt v. Progressive Insurance Company, 29660 (La. App.2d Cir. 6/18/97), 697 So.2d 672. The object of UM coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tort-feasor who is not covered by adequate liability insurance. Henson v. Safeco Insurance Companies, 585 So.2d 534 (La.1991); Daigle, supra; Nesbitt, supra.
*1164 La. R.S. 22:1406 mandates that every automobile policy issued or delivered in this state shall automatically include coverage, in not less than the limits of bodily injury liability provided by the policy, for the protection of insureds who are legally entitled to recover from owners or operators of uninsured or underinsured motor vehicles. Statutory coverage will be read into a policy as if it were in the policy itself. Henson, supra; Daigle, supra. However, the statute also provides the insured may reject in writing the statutorily mandated coverage or select lower limits. Daigle, supra.
Any exception to UM coverage must be expressed clearly, unambiguously and unmistakably, and a waiver of UM coverage must be in writing and signed by the named insured or his authorized representative. Henson, supra. It is the rejection of UM coverage, not the acceptance, that must be the affirmative act of the insured. Henson, supra; Gordon v. Southern United Fire Insurance Company, 95-2388 (La.App. 4th Cir. 8/21/96), 679 So.2d 582; Pine v. Doolittle, 28,141 (La.App.2d Cir. 6/26/96), 677 So.2d 686, writ denied, 96-2269 (La.5/30/97), 694 So.2d 240; Daigle, supra; Nesbitt, supra.
The insurer must place the insured in a position to make an informed rejection of UM coverage. Henson, supra. The insurance application must present the applicant with a separate or conspicuous rejection form that informs the applicant of his options regarding UM coverage and requires the applicant to do an affirmative act rejecting coverage, such as checking the rejection box himself or initialing or signing the rejection. Henson, supra; Nelson v. Ragan, 26724 (La. App.2d Cir. 4/5/95), 653 So.2d 185, writ denied, 95-1161 (La.6/16/95), 655 So.2d 332.

Discussion
Our review of the UM rejection form initially signed by Mrs. Anderson leads us to conclude that it fully complied with the law. It adequately informed the insured of her available options and presented her with an opportunity to select one. See Daigle, supra. Mrs. Anderson performed the affirmative act required to reject UM coverage by signing the form under the checked rejection provision. Contrary to the assertion of the plaintiffs, the UM rejection is sufficiently conspicuous; the law does not require that it be on a separate form. Henson, supra; Nelson, supra. See also Pine, supra, and Thomas v. Goodson, 26,356 (La.App.2d Cir. 12/7/94), 647 So.2d 1192; in both of these cases, UM waivers contained in insurance applications forms were upheld.
The Andersons also contest the validity of the first UM rejection form because that section is not dated. Specifically, they contend that there is a question of material fact as to when the rejection became effective and whether it was made contemporaneously with the policy application.
At the outset, we note that the courts have upheld UM rejection forms that did not even provide a place for the date next to the signature line. See Daigle, supra; Pine, supra; and Guilbeau v. Gabriel, 553 So.2d 1078 (La.App. 3d Cir.1989), writ denied, 559 So.2d 138 (La.1990). In those cases, as here, the UM rejection form was incorporated in the insurance application form.
Furthermore, our examination of the record reveals that there is no question on the face of the form as to when the initial UM rejection form was executed. The date is found on the same page of the document in two other places immediately beneath the UM rejection section. Also, the Louisiana claim manager for Midland Risk certified in her affidavit that the application form signed by Mrs. Anderson on August 4, 1994, was a true and correct copy of the application and UM waiver form signed in connection with the policy. In her own affidavit in opposition to the motion, Mrs. Anderson only attested that she was "requested by Van Alstyne Insurance Agency to return to their offices after her initial meeting on August 4, 1994" and that on August 5, 1994, she signed a "new" UM rejection form in the insurance agency office. She did not dispute her signature on the original UM rejection form or the date it was signed. The clear inference gleaned from her affidavit is that she signed the "old" UM rejection form at "her initial meeting on August 4, 1994." It is abundantly clear to this court that the effective date of *1165 the UM rejection was August 4, 1994, the date which was specified on the first page of the application. Thus, we are unable to find that there is any genuine issue as to material fact as to the execution of the initial UM rejection form. Having demonstrated that the plaintiffs executed a valid rejection of UM coverage, their UM carrier is entitled to judgment as a matter of law.[1]
For the reasons expressed above, we find that the trial court properly granted Midland Risk's motion for summary judgment.

CONCLUSION
The trial court's summary judgment in favor of Midland Risk Insurance Company is affirmed. Costs are assessed against the appellants.
AFFIRMED.
NORRIS, J., concurs in the result.
NOTES
[1] Inasmuch as the initial UM rejection was valid, we find it unnecessary to address the second UM rejection form. Like the appellee, we are unaware of any authority which would allow us to use an arguably inadequate rejection of UM coverage to invalidate a prior valid rejection of UM coverage.