722 So.2d 348 (1998)
Willard Ray SMITH, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION and Ward Chevrolet Olds, Inc., Defendant-Appellee.
No. 31,258-CA.
Court of Appeal of Louisiana, Second Circuit.
December 9, 1998.
*349 Dollar, Laird & Scott by Johnny E. Dollar, R. Nicolas Anderson, Monroe, Counsel for Appellant.
Turner, Reid, Duncan, Loomer & Patton, P.C. by Rodney E. Loomer, Sherry A. Rozell, Springfield, MO, Hudson, Potts, & Bernstien by Jan P. Christiansen, Monroe, Counsel for Appellee.
Before MARVIN, C.J., and GASKINS and PEATROSS, JJ.
PEATROSS, J.
In this products liability lawsuit arising out of a two-car collision, Willard Ray Smith ("Plaintiff") appeals from a trial court ruling granting a motion for summary judgment on behalf of Defendant, General Motors Corporation ("GM"), manufacturer of Plaintiff's vehicle. For the reasons set forth in this opinion, we affirm.

FACTS
On August 29, 1992, while exiting the Mary Lea Apartments in Monroe, Louisiana, Plaintiff's 1992 Chevrolet Blazer suddenly accelerated propelling the vehicle into Desiard Street. As the Blazer entered Desiard, it was struck by an automobile driven by Barbara Hall. Plaintiff testified by deposition that, with his foot on the brake pedal, he shifted the Blazer from reverse to drive and the vehicle immediately accelerated. Plaintiff further testified that, although he continued to put pressure on the brake pedal, the speed of the Blazer increased. Plaintiff had previously sent the Blazer to the service department of the dealership, Ward Chevrolet, complaining of hesitation problems. The dealership replaced a wire in the fuel injection system which, according to Plaintiff, corrected the problem.[1]
Plaintiff sustained injuries as a result of the collision. On August 26, 1993, he filed suit against GM pursuant to the Louisiana Products Liability Act, La. R.S. 9:2800.51, et seq., and the redhibition articles of the Louisiana Civil Code, alleging the Blazer was unreasonably dangerous in design and deviated from GM specifications.
Plaintiff served interrogatories and requests for production of documents on GM on October 24, 1994. GM took depositions of Plaintiff and Plaintiff's expert, William Hartwell ("Hartwell"), on April 18, 1997, and April 29, 1997, respectively. The case was set for trial on May 4, 1998. Following the pre-trial conference, the trial court ordered that all discovery be completed no later than seven (7) days prior to trial and that Plaintiff name any expert witnesses intended for use at trial no later than January 14, 1998.
On January 5, 1998, a motion for summary judgment was filed on behalf of GM alleging *350 that (1) Plaintiff could not produce any evidence of an alternative design, (2) Hartwell's opinions were based on facts that contradicted Plaintiff's sworn deposition testimony and were not otherwise relevant or sufficiently reliable to create a genuine issue of material fact and (3) Hartwell admitted the standard mechanical braking system for the vehicle would have been sufficient to stop the vehicle if Plaintiff had been applying pressure to the brake pedal. After a hearing, the trial court granted GM's motion finding that (1) it was incumbent on Plaintiff to produce evidence of an alternative design and Plaintiff had failed to produce any such evidence and (2) Hartwell's testimony was insufficient to carry Plaintiff's burden of establishing a deviation from GM specifications. Regarding the second finding, the trial court noted that Hartwell based his opinion on "driveability"[2] problems with the vehicle, rather than an inspection of the vehicle. Plaintiff appeals the granting of summary judgment in favor of GM.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district courts' consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Hammons v. City of Tallulah, 30,256 (La.App.2d Cir.2/25/98), 708 So.2d 502; Anderson v. Allstate Ins. Co., 29,847 (La. App.2d Cir.9/24/97), 699 So.2d 1160. An appellate court thus asks the same question as does the trial court in determining whether summary judgment is appropriate, whether there is any issue of material fact and whether the mover is entitled to judgment as a matter of law. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318 (La.1993); Berzas v. OXY USA, Inc., 29,835 (La.App.2d Cir.9/24/97), 699 So.2d 1149.
Summary judgments are governed by La. C.C.P. art. 966, which was amended in both the 1996 and 1997 legislative sessions. See Acts 1996, No. 9 of the First Extraordinary Session of 1996 and Acts 1997, No. 483. The effect of these amendments is to bring the Louisiana standard for summary judgment closely in line with Federal Rule of Civil Procedure 56 (FRCP 56) and establish that summary judgment is now favored. Hammons v. City of Tallulah, supra; Sanders v. Garcia, 29,473 (La.App.2d Cir.10/29/97), 702 So.2d 333; Anderson v. Allstate Ins. Co., supra; Berzas v. OXY USA, Inc., supra. The amended versions of the article are procedural in nature; therefore, they are subject to retroactive application. Hammons v. City of Tallulah, supra; Sanders v. Garcia, supra; Anderson v. Allstate Ins. Co., supra; NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.8/21/96), 679 So.2d 477.
Under the federal, and now Louisiana, standard for summary judgment, if the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the nonmoving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. art 966(C); Berzas v. OXY USA, Inc., supra. Further, La. C.C.P. art. 967 provides in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his responses by affidavits or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary *351 judgment, if appropriate, shall be rendered against him.
Plaintiff argues that the trial court erred in granting GM's motion for summary judgment on both of Plaintiff's claims. We first address Plaintiff's assertion that the trial court erred in granting summary judgment on the claim of design defect.
GM argued to the trial court that, since Plaintiff produced no evidence of an alternative design, GM was entitled to summary judgment as a matter of law.[3] A plaintiff who alleges defect by design under La. R.S. 9:2800.56 must prove three elements, the first of which is that another way to design the product existed at the time the manufacturer placed the design on the market. Johnson v. Black & Decker U.S., Inc., 29,996 (La.App.2d Cir.10/31/97), 701 So.2d 1360, rev. denied, 97-2971 (La.2/6/98), 709 So.2d 741. Nowhere in the portions of Hartwell's deposition contained in the record does he provide testimony concerning an alternative design. Plaintiff, in fact, concedes that he offered no evidence of alternative design. Plaintiff argues, however, that granting summary judgment based upon his failure to produce such evidence was premature because discovery had not been completed. Since the discovery deadline had not yet expired, Plaintiff submits that additional investigation and discovery could have produced an alternative design which could have been pled. We find summary judgment properly granted on this claim.
As stated in Simoneaux v. E.I. duPont de Nemours and Company, Inc., 483 So.2d 908 (La.1986), there is no absolute right to delay an action on a motion for summary judgment until discovery is complete. The only requirement is that the parties be given a fair opportunity to present their claims; and, unless a plaintiff shows probable injustice, a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of material fact.
A review of the record reveals that Plaintiff had ample time for discovery and made no effort to seek any evidence to support the design defect claim. At the time GM moved for summary judgment, this case had been pending for more than four and one-half years. During that time, Plaintiff served only one set of interrogatories and request for documents. Plaintiff had more than eight months following Hartwell's deposition in which to conduct further discovery or retain another expert witness to testify as to the existence of an alternative design.
When faced with GM's motion for summary judgment, Plaintiff offered no explanation for his failure to conduct further discovery or consult additional experts. Plaintiff was afforded a fair opportunity to present his claim and has not shown injustice in the trial court's hearing and deciding the motion prior to the discovery deadline. Plaintiff's argument on this issue is without merit.
Plaintiff next assigns as error the trial court's conclusion that Hartwell could not render an opinion on construction and composition defects without conducting an inspection of the vehicle.[4] Plaintiff contends the opinion testimony of Hartwell that the Blazer had composition and construction defects was sufficient to create a genuine issue of fact, thereby making summary judgment inappropriate. We disagree.
GM presented the trial court with three arguments in support of its contention that Plaintiff failed to produce sufficient evidence, through the testimony of Hartwell, to create genuine issues of material fact necessary to survive summary judgment. First, according to GM, Hartwell's opinions were based on facts contradictory to Plaintiff's testimony. In support of its motion for summary judgment, *352 GM attached portions of depositions of Plaintiff and Hartwell. Hartwell's theory was that a defect existed in the Idle Air Control Valve (IACV) or the Electronic Control Module (ECM) which caused the unwanted acceleration. GM argues that, because no inspection was conducted, Hartwell had no physical evidence of any such defect. Rather, his opinion was based upon alleged driveability problems which had been corrected prior to the accident. Since Hartwell's testimony was premised on facts different from those to which Plaintiff testified, GM argues that the testimony was not admissible as expert testimony to prove causation of the accident.
In its reasons for judgment, the trial court stated:
General Motors argues that Hartwell's testimony is insufficient to carry the proof of this deviation because it's not based upon the inspection of the vehicle. [sic] But, upon driveability problems. Which the record and argument of Counsel establishes that the driveability problems were apparently corrected by the dealer, Ward Chevrolet Olds in Columbia, prior to this unfortunate accident ... for those reasons the motions for summary judgment is granted.
After reviewing the portions of deposition testimony of Plaintiff and Hartwell provided with GM's motion for summary judgment and Plaintiff's response thereto, we agree with the trial court. Hartwell testified that his opinion regarding defects in the Blazer was based upon driveability problems he thought Plaintiff was experiencing prior to the accident, his experience with repairs of such driveability problems and a description of how the incident occurred. Argument of counsel for GM indicates a repair was made to the Blazer prior to the accident, at which time a wire was replaced in the electronic fuel injection system. In his deposition, Plaintiff stated that the repair corrected the problems he had experienced with the Blazer. This undisputed evidence establishes that any driveability problems Plaintiff had been experiencing with the Blazer were corrected prior to the accident.
The second basis GM provided the trial court in support of its motion for summary judgment was the absence of evidence to support Hartwell's opinion that a defect existed in the ABS which would have caused the entire ABS to fail. In Hartwell's deposition, he explained that the Blazer was equipped with three wheel speed sensors. A wheel speed sensor is a component of the ABS which monitors the rate at which a particular wheel is turning. If the sensor detects that the wheel has locked up, the ABS computer decreases the brake pressure to allow the wheel to turn again. Each wheel speed sensor affects only the wheel to which it is attached. Hartwell testified that upon failure of a sensor, the mechanical braking system would have remained operable on that wheel and the remaining three wheels would still be equipped with anti-lock braking capability. When a wheel speed sensor malfunctions, a code is registered in the ABS computer. The record indicates that a wheel speed sensor registered a code in the ABS computer but does not indicate which sensor registered the code or the cause of the code. In order for the entire ABS to become inoperative, all three wheel speed sensors would have had to malfunction simultaneously. Plaintiff has not produced any evidence that all three sensors malfunctioned simultaneously.
Finally, GM argued that if there was a failure of the IACV and if Plaintiff was applying pressure to the brake pedal, the mechanical brakes on the vehicle would have been sufficient to stop the Blazer before it entered Desiard Street. We need not address this argument, however, as it is pretermitted by our findings on the first two issues.[5]
We find, therefore, that GM carried its burden of proof of showing that there is an absence of factual support for one or more *353 elements essential to Plaintiff's claim. Thereafter, the burden shifts to Plaintiff to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial.
In response to GM's motion, Plaintiff submitted portions Hartwell's deposition testimony that driveability problems can be of an intermittent nature. Plaintiff's own testimony, however, was that the driveability problems had been corrected by the repair done by the dealership's service department prior to the accident. Plaintiff produced no factual evidence that this Blazer exhibited intermittent driveability problems. Hartwell's theory that the Blazer was exhibiting such intermittent driveability problems is based on pure speculation and conjecture. Plaintiff also pointed to Hartwell's statements regarding total and partial failure of the ABS as evidence from which a reasonable trier of fact could find in Plaintiff's favor. Plaintiff, however, has offered no factual support for Hartwell's testimony; he has offered no evidence of any defect.
These offerings by Plaintiff fail to meet his burden of producing factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. Plaintiff has failed to show the existence of an alternative design in existence at the time of manufacture which could have prevented Plaintiff's injuries; likewise, Plaintiff has failed to produce facts which would support Plaintiff's allegation that there was in fact a defect in construction and composition of the Plaintiff's vehicle which caused his injuries. Based on the record before us and applying the current law on motions for summary judgment, we find that the trial court correctly granted summary judgment in favor of GM.

CONCLUSION
For the reasons stated in this opinion, we affirm the trial court's ruling granting summary judgment in favor of GM. All costs are assessed to Plaintiff.
AFFIRMED.
NOTES
[1] During oral argument on the motion for summary judgment, counsel for GM indicated that the replacement of the wire in the fuel injection system was performed on the Blazer prior to the accident. In the portion of his deposition submitted in support of GM's motion, Plaintiff testified that the repair corrected the problems he had been experiencing with the Blazer. GM appended the actual warranty record of work performed on the Blazer and a subsequent repair order to its brief on appeal. Those documents, however, were not appended to GM's motion for summary judgment and were not otherwise made part of the record. This court may not, therefore, consider the warranty record or repair order in our review.
[2] Driveability is the term used by Hartwell to describe performance problems Plaintiff was allegedly having with the Blazer. During oral argument on the motion for summary judgment, counsel for GM, referring to Hartwell's deposition testimony, defined driveability as "surging, stalling, the vehicle's actually just not running right. There is something wrong and the engine is cutting in and out and in some instances even stalling according to Mr. Hartwell." In the portion of Hartwell's deposition submitted with Plaintiff's response to GM's motion, Hartwell's definition of driveability is "inconsistent rpms" and "problems with engine control." In Plaintiff's deposition, he characterized the performance problems as "hesitation" problems.
[3] La. R.S. 9:2800.56, Unreasonably dangerous in design, provides in pertinent part:

A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
(1) There existed an alternative design for the product that was capable of preventing the claimant's damage;....
[4] Plaintiff argues that failure to inspect the vehicle should not be a criterion by which Hartwell's opinion regarding a defect in construction and composition is judged. Failure to inspect the Blazer, or any exemplars thereof, simply shows that Hartwell had no physical evidence of defects in the vehicle upon which to base his opinion.
[5] We note, however, that in his deposition, Hartwell admitted that with the IACV wide open in the drive gear, it would take only 25 pounds of normal braking pressure (pressure exerted on the brake pedal) to stop the vehicle. Hartwell further agreed that if the ABS malfunctioned on the rear wheel brakes, a man of Plaintiff's size, approximately 270 lbs. and 6'3" tall, should have been able to stop the vehicle short of the intersection had he been pressing on the brake pedal.