748 So.2d 61 (1999)
Georgia MOUTON and Wanda Mae Woods, Plaintiffs-Appellants,
v.
SEARS ROEBUCK AND COMPANY and Kemper National Insurance Companies, Defendants-Appellees.
No. 99-669.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1999.
Writ Denied February 4, 2000.
*63 Lawrence N. Curtis, Lafayette, for Georgia Mouton, et al.
Scott Edward Frazier, Baton Rouge, Joseph Hart Garbarihno, for Sears Roebuck and Company, et al.
Christopher Joseph Aubert, Covington, for Schindler Elevator Corp.
BEFORE: YELVERTON, SAUNDERS, and GREMILLION, Judges.
YELVERTON, J.
Georgia Mouton and Wanda Mae Woods appeal a summary judgment rendered in favor of Sears Roebuck and Company and its liability insurer, Lumbermen's Mutual Casualty Company, and Schindler Elevator Corporation, defendants in a personal injury action. Mouton and Woods sued these defendants alleging that they were injured by a defective escalator while shopping at Sears in Lafayette. All defendants filed motions for summary judgment, and the motions were granted by the trial court. On this appeal Mouton and Woods argue that the trial court should have granted them a continuance in order to obtain expert testimony. They further claim that the evidence does not support summary judgment on the issue of liability in favor of the defendants.

PRESENTLY UNDISPUTED FACTS
On May 10, 1995, Mouton and Woods went to Sears to do some shopping. They got on the escalator to go to the second floor. Woods was ahead of Mouton. Both ladies claimed that when they were about a third of the way up the escalator the handrail started shaking and vibrating causing them to lose their balance, fall, and get hurt. Mouton and Woods fell down on their backs with their heads pointed toward the bottom and their feet pointing up. Mouton ended up on top of Woods.
*64 Several of the store employees heard the ladies' cries for help and proceeded to help them. They were able to stop the escalator with the emergency stop button and get Mouton and Woods off the escalator.
Sears owned the escalator. Lumbermens was its insurer. Schindler had the maintenance contract on the escalators.

CONTINUANCE
As their first assignment of error Mouton and Woods complain that the trial judge abused his discretion in denying them a continuance. If it appears from affidavits of a party opposing a motion for summary judgment that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may order a continuance or make such other order as is just. La.Code Civ.P. art. 967. Involving that article, Mouton's and Woods' attorney filed an affidavit in which he stated that he had been recently retained by them to represent them in these proceedings; that these motions for summary judgment were filed while they were unrepresented, their former attorney having withdrawn; and that after reviewing the depositions and discovery conducted in the proceedings prior to being retained, he was unable to "adequately assess the evidence concerning the operation of the escalator at issue without the aid of an expert." Their new attorney further stated that he had made preliminary inquiries but was unable to secure the services of an expert prior to the date of the hearing on the motions for summary judgment.
Suit in this case was filed shortly after the incident on July 17, 1995. The case was originally set for jury trial on July 15, 1997, but was continued on joint motion of all parties to July 14, 1998. In anticipation of the trial, in July 1998, the parties, including Mouton and Woods, filed pretrial memorandum, exhibit lists, and witness lists. On July 13, 1998, Mouton and Woods requested another continuance because they could not get the deposition of a doctor who would not be able to testify at trial. Trial was rescheduled for July 20, 1999.
On September 18, 1998, original counsel for Mouton and Woods withdrew from the case. Motions for summary judgment were then filed in January and March 1999. These motions were scheduled for hearing on March 22, 1999. Mouton and Woods were aware in January that a motion for summary judgment would be tried in March.
We do not know exactly when Mouton and Woods obtained the services of their present attorney. However, they had had the services of an attorney for over three years which was plenty of time to conduct discovery. Present counsel by way of argument suggests that their previous attorney would not advance funds to obtain the services of an expert, but there is nothing in the record to prove that that is why an expert's assistance was not obtained.
Mouton and Woods have cited the cases of Migliore v. Kinsley, 531 So.2d 1091 (La.App. 4 Cir.1988) and Kaufman v. Corporate Realty, Inc., 94-526 (La.App. 5 Cir. 12/14/94); 648 So.2d 1010, writ denied, 95-0155 (La.3/17/95); 651 So.2d 273, in support of their argument that they should be allowed to complete discovery before a ruling on the summary judgment. "Although the plaintiff should have a fair opportunity to present his claim, there is no absolute right to delay action on a motion for summary judgment until discovery is completed." Armstead v. Schwegmann Giant Super Markets, 618 So.2d 1140, 1143 (La.App. 4 Cir.), writ denied, 629 So.2d 347 (La.1993); Smith v. General Motors Corp., 31,258 (La.App. 2 Cir. 12/9/98); 722 So.2d 348. "The only requirement is that the parties be given a fair opportunity to present their claims; and, unless a plaintiff shows probable injustice, a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of material fact." Smith, 722 So.2d at 351. Furthermore, discovery in Migliore and Kaufman was hindered by the party filing the motion for summary *65 judgment. There is no complaint in this case that the defendants have done anything to interfere with the plaintiffs' access to discovery.
It was not an abuse of his discretion for the trial judge to conclude that Mouton and Woods had more than sufficient time to complete discovery. This matter has been set for trial on two occasions. The hearing on the motions for summary judgment was held six months after their first attorney withdrew from the case. Both Mouton and Woods were notified three months before the hearing, when the first motion for summary judgment was filed, that there would be a hearing in March. Mouton and Woods had sufficient time to hire another attorney who could have evaluated the case and made any discovery he felt necessary within this time. Mouton's and Woods' present attorney may feel that expert testimony is necessary, but the fact of the matter is that there has been three years of opportunity for any discovery an attorney felt necessary. It is not the fault of the defendants that the present attorney would handle the case differently from the first attorney. Even if the present attorney was not hired until shortly before the hearing date, that was no reason, under the circumstances of this case, for delaying the hearing.

SUMMARY JUDGMENT
The appellants' remaining assignment of error is that summary judgment in favor of the defendants was inappropriate because a proper evaluation of the evidence demonstrates a genuine issue of material fact. They point out that the evidence submitted by the defendant consisted of unsworn documents and deposition excerpts concerning irrelevant matters, along with matters calling for an improper weighing of the evidence or prohibited credibility determinations. Furthermore, they claim that the evidence they presented provided factual support that they would be able to satisfy their evidentiary burden of proof at trial.
With the recent amendments to La.Code Civ.P. art. 966, summary judgment is now favored. It is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Article 966(B).
However, the burden is still on the moving party to prove that summary judgment is appropriate. "In doing so, the moving party's supporting documentation must be sufficient to establish that no genuine issue of material fact remains at issue." Daigrepont v. AAA Transport. Company, 98-1329, p. 4 (La.App. 3 Cir. 3/3/99); 736 So.2d 923, 926.
Mouton and Woods alleged that Sears, Lumbermen's, and Schindler are liable to them on the basis of negligence and the rule of res ipsa loquitur. They additionally alleged that Sears and Lumbermen's were liable under the theory of strict liability.
When this accident occurred a plaintiff seeking recovery based on strict liability under La.Civ.Code art. 2317[1] had to prove that (1) he was injured by a thing, (2) the thing was in the defendant's custody, (3) there was a vice or defect creating an unreasonable risk of harm in the thing, and (4) the injured person's damage arose from such a defect. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992).
The elements of proof required of a plaintiff seeking recovery based on negligence is as follows:
To prevail on a negligence claim under La.Civ.Code art. 2315, the plaintiff must prove by a preponderance of the evidence that: (1) defendant had a duty to conform his conduct to a specific standard (duty); (2) defendant failed to conform his conduct to the appropriate standard (breach of duty); (3) defendant's *66 conduct was the cause-in-fact of plaintiff's injuries (cause-in-fact); (4) defendant's conduct was a legal cause of plaintiff's injuries (the risk and harm caused to plaintiff was within the scope of the protection afforded by the duty); and (5) plaintiff incurred actual damages (damages).
Banks v. State Farm Ins. Co., 30,868, pp. 3-4 (La.App. 2 Cir. 8/19/98); 717 So.2d 687, 690. With respect to the negligence of Schindler, "plaintiffs have the burden to show ... [Schindler] breached its duty to exercise reasonable care in the performance of its maintenance contract, and that ... [Schindler's] conduct caused the resulting injury." Rabito v. Otis Elevator Co., 93-1001, 93-1002 p.1 (La.App. 4 Cir. 12/15/94); 648 So.2d 18, 19.
Res ipsa is a rule of circumstantial evidence which allows a court to infer negligence on the part of the defendant if the facts indicate the defendant's negligence, more probably than not, caused the injury....
Res ipsa loquitur, as "a qualification of the general rule that negligence is not to be presumed," must be sparingly applied. Generally, it obtains when three requirements are met: 1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; 2) the defendant had exclusive control over the thing causing the injury; and 3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant's part.
Spott, 601 So.2d at 1362 (citations omitted).
The defendants in this case argue that Mouton and Woods have failed to prove that any act on their part was a cause-in-fact of the accident, or in the case of Sears and Lumbermen's, that the escalator contained a defect that created an unreasonable risk of harm. They claim that the evidence introduced by them in support of their motions for summary judgment indicates a complete lack of any evidence indicating that anything was wrong with the escalator.
Mouton and Woods complain that the maintenance logs, maintenance agreement, and statements signed by Ralph Draughon and John Crim, employees of Schindler, should not be considered by this court in making our de novo review of the summary judgment evidence because Articles 966 and 967 do not permit a party to utilize unsworn documents as summary judgment evidence. We agree that "[u]nsworn and unverified documents are not of sufficient evidentiary quality to be given weight in determining whether there is a genuine issue of material fact." Rhodes v. Executive Risk Consultants, Inc., 26,021, p. 4 (La.App. 2 Cir. 8/17/94); 642 So.2d 269, 273. Therefore, we will not consider these documents which were not in affidavit form or verified in making our de novo review of the record.
The remaining evidence offered in support of the motions for summary judgment was in the form of excerpts from depositions. Most of those deposed were store employees or employees of Schindler. Testimony from the people who were in the area of the escalator at the time of the accident was relatively consistent. There were no witnesses to the accident other than the plaintiffs themselves. The deposition testimony reveals that the first notice anybody else had of the accident was when they heard the ladies' cries for help. These people rushed to the escalator and noticed that the ladies were laying down on the escalator, one on top of the other, with their feet going up first. No one heard the escalator making any strange noises or noticed that the escalator was malfunctioning. Those who had used the escalator earlier in the day had not noticed any problems. Several of the deponents testified that they overheard one of the ladies talking about how one slipped and pulled the other one down with her.
Testimony from the men who serviced the escalator revealed that the escalator was checked after the incident, and it was in normal working order. One serviceman *67 testified that when the escalator is turned on, it should still vibrate if there is a problem. No evidence of vibration was found. There was also testimony that they were required to inspect the escalator once a month, but sometimes they may go in once a week.
The deposition testimony disclosed that the trail rollers were changed shortly after the accident, but that they were scheduled to be changed before the accident. Although a bad trail roller is noisy, one of the servicemen testified that he had never observed a bad trail roller vibrate.
Based on this evidence we find that the defendants proved there is an absence of factual support for one or more of the elements essential to Mouton's and Woods' claims. We now turn to the evidence that Mouton and Woods offered in opposition to the motions for summary judgment.
Both ladies allege that the handrail of the escalator was shaking so much that they lost their balance. At the time of the accident the escalator was making a lot of noise. A different excerpt of the deposition testimony of one of the servicemen revealed that bad bearings or bad rollers in the drive assembly can cause the handrail to shake. The handrails on this escalator have had to be repaired in the past.
Defendants have argued that Mouton's and Woods' testimony is self-serving. "Issues of credibility have no place in summary judgment procedure." Carriere v. State, 97-1305, p. 4 (La.App. 3 Cir. 3/6/98); 708 So.2d 822, 824, writ denied, 98-0958 (La.5/29/98); 720 So.2d 335. "It is not the court's function on a motion for summary judgment to determine or even inquire into the merits of the issues presented. While deposition testimony may be used to support or oppose a motion for summary judgment, it may not be weighed." Lexington House v. Gleason, 98-1818, p. 6 (La.App. 3 Cir. 3/31/99); 733 So.2d 123, 126 (citations omitted).
Although it appears that the defendants have questions as to Mouton's and Woods' credibility regarding the cause of the accident, those questions may not be resolved by summary judgment procedure. We find that the evidence presented by Mouton and Woods in opposition to the motions for summary judgment was sufficient to raise a genuine issue of material fact as to whether or not there may have been a defect in the escalator that could have caused a vibration.
For the foregoing reasons, we reverse the trial court's judgment granting both Schindler's and Sears' and Lumbermen's motions for summary judgment. We remand the case for further proceedings consistent with this opinion and assess one half of the costs to Schindler Elevator Corporation and one-half the costs to Sears Roebuck and Company and Lumbermen's Mutual Casualty Company.
REVERSED.
NOTES
[1] Louisiana Civil Code Article 2317.1 pertaining to damage caused by ruin, vice, or defect in things, was not effective until April 16, 1996, after the occurrence of the accident.