KIRBY, Judge.
|Jn this consolidated case, intervenors, the Louisiana State Board of Elementary and Secondary Education, the Louisiana Department of Education and the Recovery School District (hereinafter collectively referred to as “RSD”), appeal the July 7, 2010 trial court judgment granting partial summary judgment in favor of plaintiff, Orleans Parish School Board (hereinafter referred to as “OPSB”), and denying inter-venors’ motion for summary judgment. The judgment appealed from involves a ruling regarding the applicability to RSD’s intervention claims of Act 35 of the First Extraordinary Session of 2005 of the Louisiana Legislature. By order dated January 10, 2011, a writ application taken by RSD from the October 22, 2010 trial court judgment was consolidated with the appeal of the July 7, 2010 judgment. The judgment that is the subject of the writ application includes an order issued by the trial court regarding the handling of insurance proceeds currently on deposit in a joint bank account held by OPSB and RSD, and the handling of insurance proceeds received in the future for losses from damage to certain properties caused by Hurricane Katrina.
This litigation began when OPSB filed a lawsuit against its commercial property insurer on August 9, 2006, seeking recovery for damages sustained to |2certain insured properties as a result of Hurricane Katrina’s August 29, 2005 landfall and its aftermath. As of the time of filing of the original petition, OPSB claimed to have received only half of the policy limits on its primary commercial property policy. OPSB later amended its petition to include as defendants its excess commercial prop *594 erty insurers. RSD intervened in the lawsuit, claiming to have an interest in OPSB’s pending action due to the November 2005 enactment by the Louisiana Legislature of La. R.S. 17:10.7 and the amendment to La. R.S. 17:1990 (both contained in Act 35), which resulted in the transfer to RSD of 107 schools that had previously been under the jurisdiction of OPSB, and in changes to rules regarding the rights and responsibilities of RSD.
OPSB subsequently filed a second supplemental and amending petition, instituting a concursus proceeding for the insurance proceeds at issue, and alternatively, seeking a declaratory judgment that OPSB is the sole owner of proceeds from its insurance policies in effect at the time of Hurricane Katrina. In this pleading, OPSB acknowledged that funds already received by its primary insurance carrier were being held in a joint bank account in the names of both OPSB and RSD, but that OPSB was the sole signatory at that time. RSD then filed its own supplemental and amending petition seeking a declaratory judgment that, pursuant to La. R.S. 17:1990(4)(b)(iii), it has the right to receive any and all insurance proceeds paid in connection with damages caused by Hurricane Katrina to properties now under the jurisdiction of RSD.
After filing the above pleadings, both OPSB and RSD filed motions for summary judgment. The central issue of the summary judgment motions filed by OPSB and RSD is whether or not certain provisions of Act 35 of the First Extraordinary Session of 2005 of the Louisiana Legislature can be applied to |sRSD’s intervention claims against OPSB. Act 35, effective on November 30, 2005, enacted La. R.S. 17:10.7, which, as stated above, resulted in the transfer to the RSD of 107 OPSB schools, and amended La. R.S. 17:1990, which changed certain provisions regarding the rights and responsibilities of RSD, and added new provisions. R.S. 17:1990 includes the following sections that are pertinent to this appeal:
(4)(a) The school district [RSD] shall have the right to use any school building and all facilities and property otherwise part of the school and recognized as part of the facilities or assets of the school prior to its placement in the school district and shall have access to such additional facilities as are typically available to the school, its students, and faculty and staff prior to its placement in the school district. Such use shall be unrestricted, except that the school district shall be responsible for and obligated to provide for routine maintenance and repair such that the facilities and property are maintained in as good an order as when the right of use was acquired by the district. There shall be no requirement for the district to provide for the type of extensive repair to buildings or facilities that would be considered to be a capital expense. Such extensive repairs shall be provided by the governing authority of the city, parish, or other local public school system or other public entity which is responsible for the facility.
(b)(i) In the case of the transfer of schools pursuant to R.S. 17:10.7, the school district may, at the discretion of the administering agency and notwithstanding the provisions of Subparagraph (a) of this Paragraph, acquire with the transfer of the schools all the rights and responsibilities of ownership regarding all land, buildings, facilities, and other property that is part of the school being transferred, except that the school district may not transfer the ownership of the land or usable buildings constructed on the land to another, other than in the manner and under the circumstances provided for in Item (iv) of this Subpara- *595 graph, save returning the land and such buildings to the stewardship of the prior system. The district may lease land or property, dispose of property other than the land as is necessary to properly manage the operation of the schools, rebuild school buildings, or renovate school buildings.
U(ii) No building shall be destroyed pursuant to the authority of the school district unless the destruction of the building has been approved by the office of facility planning in the division of administration.
(iii) In the case that the rights and responsibilities provided for in this Sub-paragraph are acquired by the school district, the school district, through its administering agency, shall be the exclusive authority to receive, manage, and expend any and all state, local, or federal funding dedicated to or available for the purpose of repairing, renovating, or rebuilding, or building a school building or facility and any and all insurance proceeds attributable to damage done to any property, except that portion of such insurance proceeds used to pay debt owed by the prior system. A portion of all revenues available to the prior system which are dedicated to the repair, maintenance, or capital projects regarding a transferred school whether such revenue is available from tax proceeds, was borrowed, bonded, or was otherwise acquired shall be transferred by the system to the recovery district in an amount equal to the proportion that the number of schools transferred from such school system bears to the total number of schools operated by the school system during the school year immediately proceeding the school year in which the transfer occurred.
OPSB asked for summary judgment declaring that RSD has no right to the insurance proceeds arising out of damages sustained by property owned and controlled by OPSB at the time of Hurricane Katrina. In its memorandum in support of its motion for summary judgment, OPSB argued that ownership rights to the insurance proceeds at issue vested in the OPSB at the time of the loss, i.e. the landfall of Hurricane Katrina and its aftermath. OPSB also argued that the language set forth in the November 2005 amendment to La. R.S. 17:1990, included in Act 35, failed to assign ownership of the insurance proceeds to RSD. The basis for this argument by OPSB is that the damage to OPSB properties occurred prior to |fithe enactment of Act 35, and the Legislature did not designate Act 35 to apply retroactively.
RSD asked for summary judgment declaring that it has the right to pursue and receive all insurance proceeds arising out of damages sustained by former OPSB properties that were transferred to RSD subsequent to Hurricane Katrina. In support of its motion, RSD argued that because it acquired the rights and responsibilities of ownership of OPSB schools pursuant to La. R.S. 17:1990(4)(b)(iii), it has the legal right to the insurance proceeds at issue, except that portion used to pay down debt of OPSB, for damage caused by Hurricane Katrina to all lands, buildings and other property of the transferred schools. RSD further argued that Act 35, although silent on the issue of ret-roactivity, should be applied retroactively because the Legislature’s intent in enacting this legislation was to allow RSD to recover insurance proceeds attributable to damage caused by Hurricane Katrina to schools transferred to its jurisdiction so that RSD could use these proceeds to repair and rebuild these schools. According to RSD, if OPSB were allowed to receive insurance proceeds for damage to schools that are no longer under its jurisdiction, *596 the result would be an unjust windfall to OPSB. An alternative argument made by RSD is that the statute in question is interpretative, rather than substantive, and is therefore entitled to retroactive application. RSD also argued that when R.S. 17:10.7 authorized the transfer of certain OPSB school properties to RSD, and RSD elected to acquire the rights and responsibilities of ownership, this effectuated a valid post-loss assignment to RSD of the rights to all insurance proceeds available under any applicable insurance policy.
Following a hearing on the opposing motions for summary judgment, the trial court rendered judgment on July 7, 2010, denying RSD’s motion, and granting | (jOPSB’s motion in part and denying it in part. In reasons for judgment, the trial court indicated that OPSB’s motion for summary judgment was being granted only for the purpose of finding no issue of material fact that Act 35, enacted by the Louisiana Legislature in November 2005, is substantive in nature and, therefore, cannot be applied retroactively so as to allow RSD to seek payment from OPSB’s insurers for proceeds under the policies held by OPSB at the time of Hurricane Katrina. Importantly, the trial court stated that it was not ruling in this judgment that rights to the insurance proceeds at issue vested in the OPSB at the time of loss, and noted that RSD might have a claim for a pro rata portion of the proceeds to repair the schools now under its jurisdiction. However, the court found that any claim by RSD to any of the insurance proceeds is premature until such time that the underlying dispute between OPSB and its insurers is resolved. RSD has appealed the ruling of the trial court on the summary judgments filed by OPSB and RSD.
Before we reach the merits of this appeal, we must address OPSB’s motion to dismiss RSD’s appeal. By order dated March 31, 2011, a panel of this Court denied OPSB’s claim that RSD’s appeal was untimely, but referred to the panel hearing the appeal the issue of the propriety of the trial court’s designation that the July 7, 2010 judgment is a partial summary judgment that is final for purposes of an immediate appeal.
Following a hearing on RSD’s motion to certify the July 7, 2010 judgment as final, the trial court stated that the judgment did not result in a summary dismissal of RSD’s intervention. Rather, RSD’s claims in its intervention are simply premature until such time that proceeds are received by the named insured, OPSB, and after such funds are used to satisfy any debt owed by OPSB. The trial |7court found that the July 7, 2010 judgment is a partial summary judgment, and certified it as final for purposes of an immediate appeal pursuant to La. C.C.P. 1915(B)(1). We agree.
Because the trial court did not expressly state reasons for certifying the judgment as final, we have conducted a de novo determination of whether the certification was proper in accordance with the rules set forth in R.J. Messinger, Inc. v. Rosenblum, 2004-1664 (La.3/2/05), 894 So.2d 1113. The original petition in this matter was filed more than five years ago, and resolution of the issues raised in this appeal will allow the litigation to advance. We find that the judgment granting partial summary judgment in favor of OPSB was properly certified as final as there is no just reason for delay.
On appeal, RSD asserts three assignments of error:
(1) the trial court erred in finding that the November 2005 amendments to La. R.S. 17:1990(4)(b)(iii) were not intended to apply retroactively to RSD’s claim for insurance proceeds *597 attributable to damage from Hurricane Katrina to former OPSB properties that were subsequently transferred to RSD;
(2) The trial court erred in finding that the amendments to La. R.S. 17:1990 were not interpretative of prior law such as to allow retroactive application of the statute, and in failing to address the issue of prospective application of the statute to the proceeds at issue; and
(3) The trial court erred in holding that La. R.S. 17:1990(4)(b)(iii) did not constitute a legislative assignment of the claim for the insurance proceeds for Hurricane Katrina damage to former OPSB properties that were transferred to the jurisdiction of RSD subsequent to Hurricane Katrina by virtue of the enactment of Act 35.
Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if [ sany, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Article 966 was amended in 1996, but the burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover will not bear the burden of proof at trial, his burden on the motion does not require him to negate all essential elements of the plaintiffs claim, but rather to point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966 C(2); Fairbanks v. Tulane University, 98-1228 (La. App. 4 Cir. 3/31/99), 731 So.2d 983.
After the mover has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966 C(2); Smith v. General Motors Corp., 31,258 (La.App. 2 Cir. 12/9/98), 722 So.2d 348. If the non-moving party fails to meet this burden, there is no genuine issue of material fact and the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895. Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate.
In this case, it is undisputed that the Louisiana Legislature did not state that the provisions of Act 35 of the First Extraordinary Session of 2005, including the amendment to R.S. 17:1990, are to be applied retroactively. Because the legislature did not express its intent regarding the retroactive or prospective application of this statute, we must classify the law as substantive, procedural or interpretative. M.J. Farms, Ltd. v. Exxon Mobil Corporation, et al., 2007-2371, p. 1918 (La.7/1/08), 998 So.2d 16, 29; Jacobs v. City of Bunkie, 98-2510, p. 8 (La.5/18/99), 737 So.2d 14, 20. Citing Sudwischer v. Estate of Hoffpauir, 97-0785, p. 8 (La.12/12/97), 705 So.2d 724, the Supreme Court, in Jacobs v. City of Bunkie, supra, set forth the following definitions:
Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones. Interpretative laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted. Procedural laws prescribe a method for enforcing a substantive right *598 and relate to the form of the proceeding or the operation of the laws.
The trial court found that La. R.S. 17:1990(4)(b)(iii), added to La. R.S. 17:1990 in 2005, is a substantive change in the law because it significantly expands the power of RSD. We agree. As a substantive law, it can only be applied prospectively. La. C.C. Art. 6. We find no merit in RSD’s argument that this statute is interpretative, and therefore should be applied both prospectively and retroactively. After comparing the pre-2005 version of La. R.S. 17:1990 and the changes made in the 2005 amended version, we conclude that the addition of La. R.S. 17:1990(4)(b)(iii) does much more than merely clarify existing law.
Even though both parties agree that the legislature did not express its intent as to whether La. R.S. 17:1990(4)(b)(iii) is to be applied retroactively, RSD contends that the legislature must have intended for this statute to have retroactive application as it relates to state and federal funding and insurance proceeds attributable to damage to school properties due to Hurricane Katrina. RSD argues that to not apply R.S. 17:1990(4)(b)(iii) retroactively would lead to an absurd result.
|inWe disagree with these arguments of RSD. The gist of the July 7, 2010 trial court judgment is that only OPSB is entitled to pursue claims against its insurers for damages to its insured properties caused by Hurricane Katrina. OPSB is the only named insured on the policies at issue, and the losses covered by these policies were sustained prior to the November 2005 amendments to La. R.S. 17:1990. Because La. R.S. 17:1990(4)(b)(iii) is a substantive change in the law that is not entitled to retroactive application, RSD cannot rely on this statute to participate in OPSB’s litigation with its insurers as to claims on policies to which RSD was not a party at the time of the loss. The ruling of the trial court did not result in a dismissal of RSD’s intervention against OPSB. It simply means that RSD’s claim for a share of the insurance proceeds claimed by OPSB is premature until such time that OPSB has resolved its claims with its insurers.[1]
Furthermore, we find no merit in RSD’s argument that La. R.S. 17:1990(4)(b)(iii) constitutes a legislative post-loss assignment of insurance proceeds for Hurricane Katrina damage to former OPSB properties that were transferred to the jurisdiction of RSD by virtue of Act 35. The statute does not reveal any intention to assign insurance proceeds otherwise payable to OPSB to RSD for losses incurred prior to the effective date of the statute.
Even assuming arguendo that this statute were to be given retroactive application and constituted a valid post-loss assignment, we agree with the trial court’s finding that the inclusion in La. R.S. 17:1990(4)(b)(iii) of the clause that RSD shall receive insurance proceeds for damaged property, except that portion of such insurance proceeds used to pay debt owed by the prior system, shows that |nRSD would have no right to receive such insurance proceeds until the proceeds have been disbursed to the named insured first. This precedent condition is one that would have to be met before RSD could be awarded any insurance proceeds recoverable for policies issued to the prior system.
In supplemental briefs, both RSD and OPSB discussed the recent Louisiana Su *599 preme Court case of In re Katrina Canal Breaches Litigation, 2010-1823 (La.5/10/11), 68 So.3d 955, which addressed the issue of whether or not an anti-assignment clause in an insurance policy can apply to post-loss assignments. Because of our conclusion that La. R.S. 17:1990(4)(b)(iii) does not constitute a post-loss assignment, the holding of this recent Supreme Court case does not apply in this case.
The writ application consolidated with this appeal, 2010-C-1662, involves a request by RSD for supervisory review of the trial court’s October 22, 2010 ruling, which denied OPSB’s motion for summary judgment asking for a declaration that it was entitled to immediately withdraw any and all of the insurance proceeds being held in the joint bank account held by the OPSB and RSD. However, the trial court also issued an order on the handling of the funds at issue, to which RSD objects. The order issued in the October 22, 2010 judgment, but stayed pending resolution of this writ application, states as follows:
1. Within fifteen (15) days of the date of entry of this Order, OPSB and Intervenors shall take such actions as may be necessary to deposit into the registry of the Court all funds on deposit in the Joint Account.
2. Following deposit of the funds into the registry of the Court, OPSB and Intervenors may each file an appropriate motion or 112cross motion requesting an order directing disbursements of all or any portion of the funds.
3. Any monies paid in the future by any of the Defendants in connection with either their respective insurance policies issued to the OPSB or in connection with any of the claims, demands or causes of action asserted against any one or more of them in this civil action shall be paid exclusively to OPSB. Within five (5) days of its receipt of any payment by a Defendant, OPSB shall give written notice to counsel for Interve-nors which notice shall identify the date of payment, amount of payment and name of payor. Intervenors shall then have the opportunity to respond to the notice and assert their claim to a portion of the monies identified in this notice.
RSD argues that a letter agreement executed by OPSB and RSD prior to the October 22, 2010 judgment controls the receipt and allocation of the insurance proceeds at issue. However, this letter agreement included the provision that “[t]he final allocation of those funds will be reserved to be determined at a later date, either by agreement between the parties or by a judicial decree by the Court in the litigation ...” We find that the trial court’s October 22, 2010 order provides the framework for the allocation of the funds at issue, and, as a result, the letter agreement between the parties is no longer in effect.
In granting OPSB’s motion for partial summary judgment in its July 7, 2010 judgment, the trial court held that La. R.S. 17:1990(4)(b)(iii) cannot be applied retroactively so as to allow RSD to seek payment from OPSB’s insurers for proceeds under the policies held by OPSB at the time of Hurricane Katrina. Because OPSB was the only named insured on the policies at the time of loss, any proceeds found owing under the policies must be paid to OPSB only. OPSB is bound by the October 22, 2010 court order to notify RSD within five days of receipt of proceeds from the policies covering losses from Hurricane Katrina. RSD can then pursue a claim for reimbursement against OPSB. But under the law 1 isin effect at the time the losses *600 from Hurricane Katrina were incurred, OPSB is the sole party entitled to recover proceeds from its insurers on policies on which it was the sole named insured. The trial court’s October 22, 2010 order is consistent with its ruling of July 7, 2010. Because we are affirming the trial court’s July 7, 2010 judgment, we find no error in its ruling of October 22, 2010.
For the reasons stated above, the trial court’s July 7, 2010 judgment in Appeal No. 2011-CA-0009 is affirmed. We deny RSD’s writ application in 2010-C-1662, finding no error in the trial court’s ruling.
JUDGMENT OF JULY 7, 2010 AFFIRMED; WRIT APPLICATION 2010-C-1662 DENIED.

. We note that the trial court allowed RSD to amend its petition of intervention to add a claim for reimbursement of its share of the insurance proceeds claimed by OPSB based on a theory of unjust enrichment.