733 So.2d 693 (1999)
Larry P. HOLT, Plaintiff-Appellant,
v.
Bill Worthington PHIPPS, et al., Defendant-Appellee.
No. 98-1127.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1999.
*694 Mel Lewis Credeur, Lafayette, for Larry P. Holt.
John P. Guillory, Lafayette, for Bill Worthington Phipps, et al.
Edward C. Abell, Jr., Lafayette, for Scottsdale Insurance Company.
BEFORE: COOKS, DECUIR, and AMY, Judges.
COOKS, Judge.
Larry P. Holt appeals a judgment of the trial court granting summary judgment in favor of Scottsdale Insurance Company, dismissing his suit for damages. We affirm.

BACKGROUND FACTS AND PROCEDURAL HISTORY
On August 20, 1993, Holt traveled to Bill's Flea Market to visit some friends. While there, Holt and the store's proprietor, Bill Worthington Phipps, argued over a debt owed by Holt to the store. After apparently settling the issue, Holt left the store and began walking to his car. Before Holt could enter the car, Phipps came from behind and struck him in the head with an iron fireplace poker. As he fell to the ground, Phipps began to retreat. Holt, with the help of a friend, was able to leave the scene and procure emergency assistance. Eventually, Phipps was arrested and charged with aggravated assault and aggravated battery.
Holt brought suit against Phipps and Phipps d/b/a Bill's Flea Market for injuries to his neurological system, left ear, head, and neck suffered as a result of the attack. This suit was later amended to include Scottsdale, general liability insurer of Phipps d/b/a Bill's Flea Market. In response, Scottsdale filed for summary judgment claiming, because the assault and battery was intentional, neither the acts nor the resulting injuries are covered by the insurance policy. The trial court granted the motion thereby dismissing Holt's claim against Scottsdale. Holt now appeals this ruling.

ASSIGNMENTS OF ERROR
Holt assigns the following errors for review:
1. The trial court erred in granting summary judgment based upon the exclusions asserted by Scottsdale Insurance Company.
2. The trial court erred in refusing to admit the hand written statement of the defendant under an exception to the hearsay rule.

LAW AND ANALYSIS

Hand Written Statement
Phipps died shortly after this suit was instituted without first being deposed. *695 Prior to his death, however, Phipps visited the Lafayette Parish Sheriff's office to respond to a criminal investigation lodged against him as a result of the parking lot encounter. He hand wrote a statement detailing his version of the event. According to Phipps, Holt initiated the confrontation by threatening to strike Phipps with a cane. Phipps explained, in an effort to protect himself, he inadvertently struck Holt with the poker. Because this statement, on its face, raises a genuine issue of material fact regarding whether Phipps' intended to strike and injure Holt, it was offered in opposition to Scottsdale's motion for summary judgment. The trial court refused Phipps' statement, finding it constituted inadmissible hearsay.
Phipps' voluntary statement to the police is clearly hearsay. La.Code Evid. art. 801. Holt argues, even though Phipps' statement is hearsay, it is admissible as a statement against interest. La. Code Evid. art. 804(B) provides in pertinent part:
Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.
The purpose of liability insurance is to afford the insured protection from damage claims. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La.1983). As insurer, Scottsdale, must pay those damages for which Phipps is liable as a result of bodily injury or property damage caused by him. Bodily injury arising from negligent conduct is covered by the insurance policy. Under the terms of the agreement, however, intentionally inflicted injuries are excluded from coverage. Accordingly, if true, Phipps' admission of negligence would bring Holt's injuries within the scope of coverage. Hence, Phipps would be protected from incurring any "out-of-pocket expenses" if found liable for Holt's injuries. Phipps' statement was designed to protect his pecuniary and proprietary interests. Phipps' avowal was not a statement against his interest. La. Code Evid. art. 804(B)(3). To the contrary, it was uttered to avoid criminal, as well as civil consequences associated with his action. As such, the trial court properly declared it inadmissible.

Summary Judgment
As a general principle, "[a]ppellate courts review summary judgments de novo, under the same criteria which governs the district court's consideration of the appropriateness of summary judgment." Potter v. First Federal Savings & Loan Ass'n of Scotlandville, 615 So.2d 318, 325 (La.1993), citing Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). Thus, we shall conduct a de novo review of the trial record in this suit to determine if summary judgment was properly granted.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish those ends. La.Code Civ.P. art. 966(A)(2). Further, La.Code Civ.P. art. 966(C) provides:
(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements *696 of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Article 966 brings Louisiana's standard for summary judgment closely in line with the federal standard found in Fed.Rule Civ.Pro. 56(c). Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691. Accordingly, "there is no genuine issue of material fact if the nonmoving party cannot come forward at the summary judgment stage with evidence of such sufficient quantity and quality for a reasonable juror to find the party can satisfy his substantive evidentiary burden." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Sassone v. Elder, 626 So.2d 345 (La.1993). Furthermore, La. Code Civ.P. art. 967 provides in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegation or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
Scottsdale maintains Phipps' insurance policy does not provide coverage for intentional assault and battery and the resulting injuries therefrom. As support for its assertion, Scottsdale highlights the policy's general intentional injury exclusion which provides:
This insurance policy does not apply to:
a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.
The policy also contains a supplemental "assault and battery" exclusion which provides:
This insurance does not apply to "Bodily Injury" or "Property Damage" arising from:
A. Assault and Battery committed by any insured, any employee of any insured, or any other person, whether committed by or at the direction of any insured.
In Yount v. Maisano, 627 So.2d 148, 151-2 (La.1993), the Supreme Court addressed the applicability of intentional injury exclusions. The Court stated:
... The insurer bears the burden of proving the applicability of the intentional injury exclusion. La. Maintenance v. Certain Underwriters, 616 So.2d 1250 (La.1993); Great American Insurance Co., supra. The purpose of the intentional injury provision is "... to prevent an insured from acting wrongfully with the security of knowing that his insurance company will `pay the piper' for the damages." Breland, 550 So.2d at 610, quoting Transamerica Ins. Group v. Meere, 143 Ariz. 351, 694 P.2d 181, 186 (1984); Great American Insurance Co., supra.
"The subjective intent of the insured, as well as his reasonable expectations as to the scope of his insurance coverage, will determine whether an act is intentional. An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur." Id., citing Great American Ins. Co., v. Gaspard, 608 So.2d 981, 985 (La. 1992). Additionally, not all injuries which result from an intentional act are within the scope of the exclusion. Only those injuries which were themselves intended are excluded from coverage. Yount, 627 So.2d 148. In Breland v. Schilling, 550 So.2d 609 (La.1989) the Supreme Court held:
... when a minor bodily injury is intended, and such results, the injury is barred from coverage. When serious *697 bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred. But when a minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred.
Whether the act and the resulting injury were intended by the insured is question of fact to be determined by the trier of fact. The fact finder must examine, "not only the words before, at the time of, and after the pertinent conduct, but from all the facts and circumstances bearing on such intent or expectation." Because this inquiry is fact intensive, much discretion will be given to the trier of fact.
The evidence submitted establishes, for summary judgment purposes, that Phipps intended to inflict the injuries suffered by Holt. In support of their motion for summary judgment, Scottsdale introduced testimony from Holt's deposition. Holt testified Phipps did not have a violent temper. Further, Holt testified he had never known Phipps to strike anyone. When questioned about the day of the attack Holt testified:
Q: Do you recall about how long you'd been there?
A: I'd say 2:00. I might have been there an hour and-a-half, something like that. I wouldn't say it was past 2:00. I'd mentioned, you know, that I had to go. And I got about half way across. And he said, "You know, Larry, you owe me money on something." And I said, "You want a check now?" And I pulled my check out. And he says, "You owe me a hundred." And I said, "I think I owed you eighty-five, Bill, but I owed you one eighty-five for the whole thing." I said, "I'll give you one eighty-five."
And Bill just said, "No, Larry, don't worry about it." And I said, "Butch, I'll see you and PhyllisI'll call you tomorrow and let you know if we're going to the gun show."
And I turned around. And I was walking to the car. And I put the key in the car. And as God is my witness, I heard my name and looked up. And I got hit. At the time I wasn't sureI'm not sure what it was. But later I found out it was a fire poker.
Q: How did you find out it was a fire poker?
A: Mr. Sturdivant told me. He was there. Now I don't know if I wasTo this day I've had doctors ask me. I don't know if I was out any short time. I know one thing. I couldn't operate on my own. Butchor Mr. Sturdivant run over to where I was laying.
But first, Mr. Phipps leaned over me and says, "I'`l kill you." And he turned around and started going to the trailer or to his market. And that's when Butch come over and said, "Larry, you need to get up and get out of here. You get in your car."
Holt further testified:
Q: What kind of hat did you have on?
A: Cap. Just a regular baseball cap. And I didn't want to take it off even in the ambulance 
Q: Did he strike the hat, or he struck under your hat?
A: He struck along the hatthe whole thing. That's the reasonI didn't know for sure if it was a fire poker or a metal poker, or a baseball bat. But I knew it was something.
And I askedThe next day I asked Butch. I said, "Butch why didn't he He could have finished me off." He said, "He broke it on you, Larry. All he had was a handle when he was going to the house."
Q: You know how a poker has stuff that stick out.
A: That one had aIt was a log poker.
Q: Do you know if he struck you with the flat part when it was flat ways, or *698 did you actually get struck with some other part that come out?
A: I don't know.
Q: Do you remember if you were poked at all, or just hit from the side?
A: No, I wasn't poked. He swung like a baseball player would, both hands.
Q: Do you know if you were scratched in any way from it, or just 
A: No, I wasn't scratched. I was knocked off my feet.
In Gaspard, 608 So.2d at 985 citing Pique v. Saia, 450 So.2d 654 (La.1984) the Court stated:
An injury is intentional, i.e., the product of an intentional act, only when the person who acts either consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result. (Citations omitted).
After examining all of the facts and circumstances, there is no question that Phipps expected or intended to cause the injuries that resulted. When a person strikes another in the head with an iron fireplace poker, it indicates a determination to inflict serious injuries. This conduct shows "indifference to the consequences that may flow from actions as well as acting wrongfully and without just cause." Keathley v. State Farm Fire & Casualty Ins., 594 So.2d 963, 966 (La. App. 3 Cir.1992). The affidavit of Vernon Sturdivant, eyewitness to the incident, submitted in opposition to the motion for summary judgment fails to set forth facts sufficient to controvert this conclusion. Sturdivant relates by affidavit:
... that Mr. Holt, Mr. Phipps and himself were engaged in conversation outside of the establishment. During the course of this conversation a verbal disagreement occurred between Mr. Phipps and Mr. Holt. Mr. Phipps had been drinking and showed some signs of the effects of alcohol in his voice and movement. Mr. Holt was holding a cane that he used during this discussion. During the course of this discussion, Mr. Phipps was waiving around a fire poker which struck Mr. Holt. Mr. Phipps was approximately 66 years old at the time of this incident and weighed approximately 80 pounds less than Mr. Holt who was 48 years old at the time. While affiant did see Mr. Phipps swing the poker which made contact with the person of Mr. Holt, he did not hear any statement by Mr. Phipps indicating any intent to injury(sic) Mr. Holt prior to the contact nor any statement indicating he intended to strike him.
Whether Phipps verbally communicated his intent to injure Holt does not create a genuine issue of material fact. His actions spoke louder than the words Sturdivant claims he did not hear. Accordingly, we find Scottsdale is entitled to summary judgment as a matter of law.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed against the plaintiff-appellant.
AFFIRMED.