778 So.2d 728 (2001)
Ingermar J. WELCH, Plaintiff-Appellant,
v.
TECHNOTRIM, INC., Defendant-Appellee.
No. 34,355-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 2001.
*729 Samuel D. Goodwin, David P. Daye, Counsel for Appellant.
PlauchÈ, Maselli, Landry & Parkerson, by Andrew L. Plauche, Jr., Mark E. Young, Counsel for Appellee.
Gregory S. Unger, Counsel for Intervenors-Appellees Johnson Controls and American Manufacturers Mutual Ins. Co.
Before WILLIAMS, STEWART and CARAWAY, JJ.
STEWART, J.
Upon granting a motion for summary judgment filed by the defendant, Technotrim, Inc., ("Technotrim"), the trial court dismissed the claims of the plaintiff, Ingermar Welch, in this products liability action. Welch asserts on appeal that genuine issues of material fact exist which preclude summary judgment, and that these issues *730 pertain to whether seat covers manufactured by Technotrim were unreasonably dangerous due either to their construction or composition or to Tecnotrim's failure to provide an adequate warning. We find that Welch has failed to show there are genuine issues for trial, and affirm the summary judgment in favor of Technotrim.

FACTS
On November 28, 1994, while employed as a seat closer at Johnson Controls, Inc., ("JCI"), a business which assembles seating systems for automobiles, Welch injured his left hand while attempting to close a seat cover over a seat frame. Welch stated in a deposition that his left hand went numb for a second. He took a break, but was able to complete his shift. Welch continued working as a seat closer until sometime in May 1995, when he learned that he would have to undergo surgery for his injury.
On November 8, 1995, Welch filed suit against Technotrim, a manufacturer of seat covers for use in automobiles and the supplier of the seat covers used by JCI in its assemblage of seating systems for a General Motors Corporation ("GM") plant in Shreveport, Louisiana. Welch alleged that his injury was caused by a defective seat cover manufactured by Technotrim. Welch specifically alleged that Technotrim sent JCI a shipment of seat covers that were smaller than specifications allowed and that excessive force was required to install the too small seat covers. Thus, Welch alleged that the defectively manufactured seat covers were unreasonably dangerous to the installer during the normal course of installation. JCI and its workers' compensation insurer filed a petition of intervention for recovery of indemnity benefits paid to Welch and medical expenses paid on his behalf.
On November 5, 1999, Technotrim filed a motion for summary judgment on the grounds that Welch would be unable to meet the burden of proving that the seat cover he was installing on the date of the incident was defective in any manner at the time it left Technotrim. In support of its motion, Technotrim offered Welch's own deposition. Welch stated that he began working at JCI in May 1994 as a forklift operator. Within three or four months, he obtained the position of seat closer, which he described as a job no one else on the assembly line wanted. The seat closer is required to close four clamps which secure the seat cover over the seat frame; the clamps are closed by hand. With regard to the injury of his hand, Welch admitted that he had not encountered the tighter seat covers before the date of his injury. He stated that the covers seemed tighter than normal and were extremely hard to close. He indicated that the abnormal tightness was evident in a whole shipment of covers that he worked with for months. Welch claimed that a seat cover was measured and determined to be too small or off specification. However, he did not know what happened to the seat cover that was measured, and he did not indicate that he participated in the measuring of the cover. He was simply told that the cover was too small. Even though the covers were allegedly too small, Welch indicated in his deposition that the covers were all used in the assembly process.
Technotrim also offered the deposition of William Schafer, a division quality manager at JCI at the time of the deposition and an operations manager responsible for quality and materials at the time of Welch's injury. Schafer was not aware of any covers having been found to be tighter than any other covers used at JCI. He did not recall attending any meetings about tighter than usual seat covers with union representatives, and he did not recall paying employees extra for the installation of tight seat covers. Schafer stated that seat covers are designed to provide a "very snug fit." He further stated that even if some covers had been too tight, it would have been a design issue for which JCI bore responsibility. Schafer explained *731 that JCI designed covers to fit the components of the seats it assembled. Technotrim was provided with blue prints and steel dies paid for by GM which were used to cut the parts of the seat covers which were then sown together. All covers were made using the same die. According to Schafer, a paper trail documenting a quality issue would exist if there had been a problem with a defect in the seat covers. He explained that JCI would have obtained samples to verify against the print seam, would have notified its supplier, Technotrim, of the problem, and would have sent samples to the supplier for analysis. He also stated that if there had been a problem with the seat covers as described by Welch, then there would have been some documentation.
An affidavit by Samuel P. Watters, Technotrim's general plant manager and former director of quality, clarified Schafer's deposition by explaining that the seat covers manufactured by Technotrim were die-cut on dies owned and provided by GM. The dies were constructed in 1993, and the same dies were used for the 1994 and 1995 model years without any design changes. Technotrim supplied seat covers to JCI in accordance with JCI's design specifications. An affidavit by William E. Perkins, a quality engineer with Technotrim, stated that no documentation reflecting sizing problems was found.
Technotrim also offered in support of its motion for summary judgment the depositions of a number of JCI's employees. Virgil Black was a seat maker with JCI in November 1994. Black put covers on the backs of the seats. Black did not recall the covers being too small or out of specification. He also denied that employees were paid extra to work with seat covers that were too small. Black did say that while the covers may have been tight, they were not made improperly.
Reginald Singleton worked with Welch as a seat closer in November 1994. According to Singleton, the seat covers were so tight that they could hardly be closed, and the employees were sometimes given extra pay or extra hours to work with the tight covers. Singleton recalled that "they" came out to measure the covers and that someone from JCI told him the covers were tight. However, he did not recall anyone from JCI checking the covers, and he did not speak with anyone from Technotrim. Furthermore, he did not recall anyone saying that the covers were off of specification.
Verdell Evans worked as a material handler and union representative in November 1994. Evans recalled that the seat covers were too small for the seat frame, that someone from Technotrim came to JCI to check the covers, and that JCI employees got extra pay as an incentive for working with the tight seat covers. Evans stated that he spoke two or three times with someone from Technotrim, but he did not recall with whom he spoke. While he saw people from Technotrim with rulers, he did not see them measure anything. He recalled it being said that the seat covers were too tight, but not that they were off of specification. Evans believed that the tightness was a problem attributable to Technotrim because the seat covers changed suddenly and Technotrim began sending people to JCI. However, Evans also believed that the material changed a bit when the tightness changed. Evans admitted that even after the covers became too tight, JCI employees still generally worked less than eight hours a day assembling the seats. He also admitted that seat covers are supposed to be tight. Evans described the position of seat closer as the least desirable job on the assembly line.
Finally, Technotrim offered the deposition of Jeff Hall, the United Auto Workers' chairman at JCI. Hall stated that JCI employees were having problems stretching the seat covers over the seat frames, so management checked the covers and found them to be out of specification. JCI continued to use the seat covers, but paid the employees extra for working *732 with them. According to Hall, Technotrim sent people who checked boxes of covers with "a little measurement thing." Hall recalled that Technotrim admitted that the design was too small and that it involved an engineering problem. Hall did not know who was responsible for the design of the seat covers. Hall also stated that the foam and frame of the seats were checked and that the problem was found to involve the seat covers.
After the filing of the motion for summary judgment by Technotrim, Welch amended his petition to assert an inadequate warning claim. Welch asserted that Technotrim had a duty to warn JCI employees that the seat covers could not be installed without using dangerously excessive force. Welch partly based this claim upon allegations of a joint venture or corporate relationship between JCI, Technotrim, and a Japanese corporation. Welch also filed an opposition to Technotrim's motion for summary judgment which was largely supported by most of the same evidence supporting Technotrim's motion. In addition, Welch included an affidavit by Jeff Hall stating that the seat covers, which JCI's employees had difficulty closing from late 1994 through early 1995, were determined to be off of specification. Another offering by Welch was the deposition of Wesley Camp, a material supervisor at JCI, who stated that all seat covers were tight, that he had no knowledge of extra pay, and that he knew nothing about seat covers being out of specification. Also included in Welch's offerings were some promotional materials pertaining to Technotrim and JCI.
The trial court granted Technotrim's motion for summary judgment on May 16, 2000. In a written opinion, the trial court found that Welch failed to set forth any evidentiary facts establishing that the tight seat covers deviated in a material way from the specifications. The trial court also found that Welch failed to come forth with evidence that the tightness of the covers was a material defect which rendered the seat covers more dangerous than they were designed to be or dangerous to an extent beyond that which would be contemplated by the ordinary user. Finally, the trial court found no evidence suggesting a breach of the duty to warn, since there was no record of any injuries prior to Welch's and no evidence that Technotrim had knowledge that the covers were tighter than usual before Welch's injury occurred.

DISCUSSION

Summary Judgment Law
Appellate courts conduct a de novo review of a summary judgment under the same criteria which govern the trial court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730; Goodrich v. Caterpillar, Inc., 30,762 (La.App.2d Cir.8/19/98), 717 So.2d 1235. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law. La. C.C.P. art. 966(A)(2). Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof remains with the movant. La. C.C.P. art. 966(C)(2). When the moving party, who will not bear the burden of proof at trial on the matter before the court on summary judgment, points out an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. If the non-moving party fails to do so, there is no genuine issue of material fact for trial and summary judgment is *733 appropriate.[1] La. C.C.P. arts. 966 and 967; Smith v. General Motors Corp., 31,258 (La.App.2d Cir.12/9/98), 722 So.2d 348. Circumstantial evidence may be sufficient to establish a genuine issue of material fact. Norton v. Claiborne Elec. Co-op, Inc., 31,886 (La.App.2d Cir.5/5/99), 732 So.2d 1256, writ denied, 99-1823 (La.10/01/99), 748 So.2d 454.

Products Liability Law
The Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51 et seq., sets forth the exclusive theories of manufacturers' liability for damages caused by their products. A manufacturer shall be liable for damage caused by an unreasonably dangerous characteristic of a product when such damage arose from a reasonably anticipated use of the product. La. R.S. 9:2800.54(A). A product may be unreasonably dangerous in one of four ways: (1) construction or composition; (2) design; (3) inadequate warning; or (4) nonconformity to an express warranty. La. R.S. 9:2800.54(B). The burden is on the plaintiff to prove that a product is unreasonably dangerous. La. R.S. 9:2800.55(D). Defects are not presumed by the mere occurrence of an accident. Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992); Scott v. American Olean Tile Co., Inc., 97-1080 (La.App. 3d Cir.2/4/98), 706 So.2d 1091; Jaeger v. Automotive Cas. Ins. Co., 95-2448 (La.App. 4th Cir.10/9/96), 682 So.2d 292, writ denied, 96-2715 (La.2/07/97), 688 So.2d 498.
Welch has asserted two theories of liability against Technotrim under the LPLA. First, Welch has asserted that a shipment of seat covers manufactured by Technotrim was unreasonably dangerous in construction or composition due to Technotrim's failure to manufacture the seat covers within the design specifications. Second, Welch has asserted that a shipment of seat covers was unreasonably dangerous due to Technotrim's failure to provide an adequate warning regarding the dangers of attempting to install the seat covers after becoming aware that the covers were dangerously tight. Neither claim is supported by sufficient facts establishing that Welch will be able to satisfy his evidentiary burden at trial.

Construction or Composition Claim
A product is unreasonably dangerous in construction or composition if, at the time the product left the manufacturer's control, it deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer. La. R.S. 9:2800.55. Accordingly, a claimant must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it "unreasonably dangerous." Morris v. United Services Auto. Ass'n., 32,528 (La.App.2d Cir.2/18/00), 756 So.2d 549, citing Kennedy, A Primer on the Louisiana Products Liability Act, 49 La. L.Rev. 565, 593 (1989); Gallagan, The Louisiana Products Liability Act: Making Sense of It All, 49 La. L.Rev. 629, 648 (1989).
From our review of Technotrim's motion for summary judgment and supporting documentation, it is apparent that Technotrim succeeded in pointing out an absence of factual support for one or more elements essential to Welch's claim. However, Welch has produced no factual support sufficient to establish that he will be *734 able to meet the burden at trial of proving a material deviation from the specifications, performance standards, or other seat covers manufactured by Technotrim. The record establishes, at best, that the seat covers used by JCI in its assembly process at the time of Welch's injury were tighter than usual and difficult to close. The only factual support for Welch's assertion that the seat covers did not meet specifications came from Welch and Jeff Hall, who stated in their depositions that the seat covers were out of specifications. Neither Welch nor Hall actually measured the covers or made the determination that the covers did not meet applicable specifications. Moreover, there is no factual support to buttress the claims of Welch and Hall that the seat covers did not meet specifications. Welch has not come forth with evidence to show the specifications which Technotrim was required to abide by in manufacturing the seat covers, or to show a material deviation from such specifications.
Welch argues that there is sufficient circumstantial evidence to raise an issue of material fact as to whether the seat covers were manufactured out of specifications. In this instance, though, the circumstantial evidence does not rise to the level of creating a genuine issue of fact as to whether the seat covers manufactured by Technotrim were unreasonably dangerous in construction or composition. No seat covers from the time of Welch's injury are available for inspection. In fact, it appears that the allegedly defective covers were assembled into the seating systems and now reside in GM automobiles. This circumstance, along with the fact that the covers were manufactured by Technotrim using dies provided by GM and designs by JCI, raises doubt as to the claims made by Welch regarding deviations from the specifications and would seemingly require Welch to come forward with a more specific factual showing in order to defeat Technotrim's summary judgment motion. While Welch argues that even a minimal deviation which made the covers more dangerous to install can be considered a material deviation, there is no factual support establishing any deviation from the specifications. Absent evidence of the specifications and a material deviation from such specifications, Welch's claim relies upon the fact that he injured his hand while closing an allegedly tighter than usual seat cover. As stated previously, we cannot presume a defect by the mere fact that an accident occurred. We find that there is no genuine issue as to material fact regarding whether the seat covers manufactured by Technotrim were unreasonably dangerous in construction or composition. Accordingly, summary judgment in favor of Technotrim on this issue is appropriate.

Inadequate Warning
In arguing that a genuine issue of material fact exists as to whether Technotrim failed to provide an adequate warning of the characteristic, namely, the tightness of the seat covers, which rendered the seat covers unreasonably dangerous during the assembly of the seating system, Welch relies upon La. R.S. 9:2800.57(C). This provision states:
C. A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
La. R.S. 9:2800.57(C). Welch argues that he has come forth with sufficient evidence that Technotrim knew JCI's employees were installing the mis-manufactured seat covers by hand and that they were having great difficulty doing so.
Our review of the documentation submitted in support of and in opposition to Technotrim's motion for summary judgment *735 convinces us that there is no genuine issue of material fact pertaining to Welch's inadequate warning claim. In his deposition, Welch stated the he first noticed the tighter seat covers on the day of his injury. No other evidence establishes awareness of a problem with the seat covers prior to the time of Welch's injury. Reginald Singelton, Verdell Evans, and Jeff Hall stated or suggested in their depositions that Technotrim sent people to JCI to check the seat covers. However, neither Singleton, Evans, nor Hall indicated that this occurred prior to Welch's injury.
Additionally, a manufacturer is not required to provide an adequate warning when:
(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or
(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.
La. R.S. 9:2800.57(B). A manufacturer's duty to warn does not include warnings concerning dangers that are or should be obvious to the ordinary user. Jaeger v. Automotive Cas. Ins. Co., supra. Additionally, those who are "sophisticated users" of a product may be presumed to know about the danger presented by the product due to their familiarity with it. Mallery v. International Harvester Co., 96-321 (La.App. 3d Cir.11/6/96), 690 So.2d 765, writ denied, 97-1323 (La.9/05/97), 700 So.2d 512; Johnston v. Hartford Ins. Co., 623 So.2d 35 (La.App. 1st Cir.1993), writ denied 626 So.2d 1170 (La.1993).
The documentation supporting and opposing Technotrim's motion for summary judgment establishes that the seat covers were designed and manufactured so as to provide a "very snug fit" and that they were known by JCI's employees to be tight. Thus, tightness was a characteristic of the product that was known by the users and handlers of the seat covers at JCI. The documentation further establishes that the position of seat closer was the least desirable on the assembly line, no doubt due to the difficult physical labor required to manually close the seat covers. Welch stated in his deposition that he began working at JCI in May 1994, and that he obtained the seat closer position on the assembly line within three or four months. Therefore, Welch had closing experience prior to the time of his injury in November 1994 and was no doubt aware of the difficulties encountered in that position. Finally, the record establishes that Technotrim merely manufactured the seat covers using dies and design specifications provided by JCI and GM. Technotrim played no role in either the design of the seat covers and seating system, or in JCI's assembly process. Under these circumstances, we do not find that Welch has sufficient factual support to establish that Technotrim had a duty to warn of the tightness of the seat covers or of any danger associated with the manual assembly of the seat covers onto the seat frame during JCI's assembly process. Accordingly, summary judgment in favor of Technotrim is likewise warranted as to Welch's inadequate warning claim.

CONCLUSION
For the reasons discussed, we conclude that Welch has not come forward with factual support sufficient to establish that he will be able satisfy the evidentiary burden specified in the LPLA for establishing the existence of a defective product. We have determined that summary judgment in favor of Technotrim is appropriate. Accordingly, we affirm the judgment of the trial court at appellant's cost.
AFFIRMED.
NOTES
[1] The 1996 and 1997 amendments to La. C.C.P. art. 966 brought Louisiana's summary judgment standards closely in line with the federal standard set forth in Fed. Rule Civ. Pro. 56(c). Under the federal standard, there is no genuine issue of material fact if the non-moving party fails to come forward with evidence of a sufficient quantity and quality for a reasonable juror to find that the party can satisfy his substantive evidentiary burden. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Sassone v. Elder, 626 So.2d 345 (La.1993); Holt v. Phipps, 98-1127 (La.App. 3d Cir.4/21/99), 733 So.2d 693, writ denied. 99-1504 (La.9/17/99), 747 So.2d 1108.