954 So.2d 238 (2007)
Maria Charlotte LOWREY, Plaintiff-Appellant
v.
Dr. Blaine M. BORDERS, et al., Defendant-Appellee.
No. 41,852-CA.
Court of Appeal of Louisiana, Second Circuit.
March 7, 2007.
*239 Allan L. Placke, West Monroe, for Appellant.
Brian E. Crawford, Jefferson B. Joyce, Monroe, for Appellee, Dr. Blaine M. Borders and Louisiana Medical Mutual Insurance Company.
Bruce M. Mintz, Monroe, for Appellee, Dr. John Michael Barraza, Radiology Associates and St. Paul Fire & Marine Insurance Company.
Before BROWN, WILLIAMS and LOLLEY, JJ.
WILLIAMS, Judge.
The plaintiff, Maria Lowrey, appeals a judgment dismissing her medical malpractice lawsuit against the defendants, John Michael Barraza, M.D., Physicians Management Company of Monroe, Inc. d/b/a Radiology Associates ("Radiology Associates") and St. Paul Fire and Marine Insurance Company ("St. Paul"). The district court granted defendants' motion for summary judgment. For the following reasons, we affirm.

FACTS
On the morning of February 23, 2000, 37-year-old Maria Charlotte Lowrey was transported by ambulance to the emergency room of the St. Francis Medical Center in Monroe, Louisiana. The emergency room report reflects that she complained of left facial numbness, vertigo and nausea. Her medical history included a prior heart surgery to correct tachycardia. Dr. Dennis Sullivan examined Ms. Lowrey and then asked Dr. Thomas Gulick, a neurologist, to evaluate her for a possible neurological problem.
Dr. Gulick ordered a CT scan of Ms. Lowrey's head and chest and an MRI scan of her head. The brain scans were negative. The CT scans were performed at approximately 1:30 p.m. Dr. John Barraza, a radiologist, evaluated the CT scan of Ms. Lowrey's chest. Dr. Barraza reported the CT findings as "suspicious for a small limited Type II dissection of the ascending aorta." However, he stated that the findings were not convincing and suggested the CT scan be repeated later.
*240 Dr. Gulick then consulted Dr. Blaine Borders, a cardiac surgeon. A second CT scan was performed and was again interpreted by Dr. Barraza as suspicious for an aortic dissection. Dr. Borders agreed that the scan showed an abnormality, but observed that Ms. Lowrey did not fit the typical presentation of a patient with an aortic dissection; she did not have chest pain or shock.
Dr. Borders ordered an aortogram to further diagnose Ms. Lowrey's problem. In his deposition, he explained the differences of the tests:
[CT] scans are a hundred percent sensitive for finding an aortic dissection, but they're only ninety-six percent specific. . . . If there's an aortic dissection there and it shows it on the [CT] scan, . . . a hundred percent of the time it's possible, but . . . it can show it on a[CT] scan and five percent or four percent of the time it not be an aortic dissection . . . Aortography has the other flip side to it, that it's only ninety-five percent specific, but it's a hundred percent sensitive if it's there, okay, but if it's not there on the aortography, there is a chance that it is there.
The aortogram showed no evidence of an aortic dissection. Dr. Borders next ordered a transesophageal echocardiogram (TEE). This test showed no abnormality but, as Dr. Borders explained in his deposition, this test was the least sensitive of the tests for the aortic area in question.
At 8:00 p.m. on February 23, Ms. Lowrey signed a written consent to a surgical procedure described as "ascending aortic repair / replacement." The form listed several risks from the procedure, including death, brain damage, quadriplegia, loss of arm or leg and disfiguring scars. With the cause of Ms. Lowrey's symptoms still unclear, Dr. Borders admitted her to the intensive care unit on beta-blocker therapy and scheduled another CT scan for the next day.
On the morning of February 24, Ms. Lowrey was complaining of chest pains. The third CT scan was performed and interpreted by Dr. Barraza, who reported, "Findings within the ascending aorta persist on three studies and must be considered an aortic dissection (DeBakey Type II)." Because an aortic dissection is a life-threatening problem if left untreated, because the CT scans all showed an abnormality in Ms. Lowrey's aorta, and because Ms. Lowrey had begun to complain of chest pain, Dr. Borders concluded that the only way to conclusively rule out the condition was to perform surgery  a sternotomy  and examine the area. When Dr. Borders performed the operation, he found that Ms. Lowrey's aorta was normal. Both Dr. Borders and Dr. Barraza explained that the abnormal appearance of the aorta shown on the CT scans could have been the result of a pulsation artifact caused by the movement of the aorta during the CT scan.
Shortly after Ms. Lowrey was discharged from the hospital, she sought a medical review panel regarding the actions of the hospital and the doctors. The panel found no breach of the standard of care by the hospital, Dr. Barraza or Dr. Borders. The panel issued an opinion finding that the evidence did not support the conclusion that Dr. Barraza failed to meet the applicable standard of care in treating Ms. Lowrey. The panel stated the following reasons for this conclusion:
(1) A CT scan of the chest was performed three (3) times within twenty-four (24) hours. Each of these studies showed similar findings such that diagnosis of aortic dissection of the ascending aorta must be considered.
(2) Additional studies were performed in an attempt to confirm a diagnosis of *241 aortic dissection of the ascending aorta which were appropriate. However, even though these additional studies were negative, a diagnosis of aortic dissection of the ascending aorta could not be ruled out.
(3) Consultation was obtained with several other radiologists who concurred in Dr. Barraza's opinion.
In May 2002, the plaintiff, Ms. Lowrey, filed a petition for damages against the defendants, Dr. Borders, his medical malpractice insurer, Dr. Barraza, Radiology Associates and their insurer, St. Paul. The plaintiff alleged that Dr. Borders and Dr. Barraza breached the applicable standard of care in failing to properly diagnose and treat plaintiff. In 2003, Dr. Borders and his insurer filed a motion for summary judgment, which was denied by the district court. In 2004, plaintiff moved for a partial summary judgment alleging that the defendants failed to obtain her informed consent to the surgery. The court denied this motion as well.
In 2006, Dr. Barraza, his employer and their insurer filed a motion for summary judgment seeking dismissal from the lawsuit. In support of his motion, Dr. Barraza relied upon, inter alia, the deposition testimony of the plaintiffs' radiology expert, Dr. Charles Matthews, a diagnostic radiologist in New Orleans, who had reviewed the CT scans of plaintiff's chest. Dr. Matthews concluded that the dark line on the aorta in the scans was a pulsation artifact caused by the movement of the aorta during the scan.
Dr. Barraza also offered the affidavit of Dr. Clifton Coffman, a radiologist who served on the medical review panel in this case. Dr. Coffman restated the conclusions of the panel that a diagnosis of aortic dissection could not be ruled out in plaintiff's case despite the other studies that were done that produced negative results. Additionally, Dr. Barraza offered an excerpt from the deposition of plaintiff's other medical expert, Dr. James Weiss, a clinical cardiologist and professor of cardiology at Johns Hopkins Hospital, who stated that he was not an expert CT reader and always obtained help from a radiologist in looking at CT scans. In opposition to summary judgment, plaintiff filed the complete depositions of the parties' medical witnesses.
After a hearing on Dr. Barraza's motion for summary judgment, the district court stated:
I find that Dr. Barraza, that everyone agrees that his interpretation was reasonable of the CT scan. I find that it was not his decision to operate, nothing in the record would substantiate that, and that there is no genuine issue as to any material facts and thus I am going to grant the motion for summary judgment.
The plaintiff appeals the summary judgment dismissing her claims against Dr. Barraza, his employer and their insurer.

DISCUSSION
The plaintiff contends the district court erred in granting the motion for summary judgment. Plaintiff argues that a genuine issue of material fact exists as to whether Dr. Barraza breached the standard of care in finding a greater than 50% chance that an aortic dissection was present based on CT scans, despite the negative results of all other diagnostic tests.
Appellate courts conduct a de novo review of summary judgment under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730. Summary judgment shall be granted if the pleadings, *242 depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B); Welch v. Technotrim, Inc., 34,355 (La.App. 2d Cir.1/24/01), 778 So.2d 728, writ denied, 01-0512 (La.6/15/01), 793 So.2d 1232.
The burden of proof remains with the mover. LSA-C.C.P. art. 966(C)(2). However, when the moving party will not bear the burden of proof at trial on the matter before the court on summary judgment and points out an absence of factual support for one or more elements essential to the adverse party's claim, the non-moving party must produce factual support sufficient to show that he will be able to satisfy his evidentiary burden at trial. Otherwise, there is no genuine issue of material fact for trial, and summary judgment is appropriate. LSA-C.C.P. arts. 966 and 967; Welch, supra.
In a medical malpractice action, the plaintiff must prove the applicable standard of care, the breach of this standard of care, and the causal connection between the breach and the resulting injury. LSA-R.S. 9:2794(A); Britt v. Taylor, 37,378 (La. App. 2d Cir.8/20/03), 852 So.2d 1128; Orea v. Brannan, 30,628 (La.App. 2d Cir.6/24/98), 715 So.2d 108. Generally at trial, a plaintiff must prove the applicable standard of care through expert medical testimony unless, "the physician does an obviously careless act . . . from which a lay person can infer negligence." Pfiffner v. Correa, 94-0924 (La.10/17/94), 643 So.2d 1228 at 1233; Strange v. Shroff, 37,353 (La.App. 2d Cir.7/16/03), 850 So.2d 1077.
Expert opinion testimony in the form of an affidavit or a deposition may be considered in support of or opposition to a motion for summary judgment. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. The opinion of the medical review panel may be considered by the court when ruling on a summary judgment motion. Henderson v. Homer Memorial Hospital, 40,585 (La.App. 2d Cir.1/27/06), 920 So.2d 988, writ denied, XXXX-XXXX (La.5/5/06), 927 So.2d 316.
From our review of the evidence submitted in favor of summary judgment, we conclude that Dr. Barraza successfully pointed out an absence of factual support for plaintiff's claim that Dr. Barraza failed to meet the applicable standard of care. In finding that Dr. Barraza did not breach the standard of care as a radiologist, the medical review panel observed that the three CT scans of plaintiff's chest showed similar findings such that the diagnosis of an aortic dissection could not be ruled out. Further, the panel found that the additional tests performed during the course of treatment, although negative, likewise did not exclude a diagnosis of aortic dissection. Finally, the panel noted that Dr. Barraza consulted with other radiologists during the process and that these persons concurred with his opinion. In his deposition, Dr. Barraza maintained that the CT scans were suspicious for an aortic dissection. This evidence was sufficient to shift the burden of production to the plaintiff on this issue.
Plaintiff's radiology expert witness was Dr. Charles Matthews, who was firmly of the opinion that the CT scans showed a pulsation artifact rather than an aortic dissection, in light of the normal results obtained from the angiogram and TEE study. However, Dr. Matthews also stated that the findings of the successive CT scans would have continued the suspicion that a dissection was present:
A: [The presence of the abnormality on the second CT scan] continues the *243 question of whether or not it's there. Someone could reasonably interpret, well, I see the same thing again. It really is there.
Q: So based on that, it would not be a breach of the standard of care of radiology to again say that it was suspicious for an aortic dissection?
A: That's a reasonable interpretation to say there is a possible dissection there.
Although Dr. Matthews reiterated his impression that the CT scans and the other tests demonstrated that there was no dissection, he stated:
[Assuming the other tests were done] if [Dr. Barraza's] interpretation was there was a possible dissection, I can go along with that. I think in the end it's going to be the correct conclusion.
Dr. Matthews said that interpreting a CT scan for a pulsation artifact can be "tricky" and agreed that different radiologists could read it differently and still be within the standard of care. In addition, Dr. Matthews acknowledged that he did not know whether the plaintiff had complained of chest pain and was not aware of plaintiff's complete clinical picture.
In her supplemental brief, the plaintiff argues that Dr. Barraza is liable for her damages because of his participation in the decision to perform surgery, citing Hernandez v. Chalmette Medical Center, 01-0074, 03-1169, 03-1456 (La.App. 4th Cir.2/4/04), 869 So.2d 141, writ denied, 04-0517, 04-0546 (La.4/8/04), 870 So.2d 277, 279. However, the factual situation in Hernandez, supra, can be distinguished from that of the present case. In Hernandez, the medical review panel concluded that the radiologist had breached the standard of care by incorrectly interpreting the x-ray films. Here, in contrast, the panel and even plaintiff's expert, Dr. Matthews, opined that Dr. Barraza's interpretation of the CT scan results was reasonable under the circumstances. Thus, plaintiff's argument lacks merit.
Based upon this record, the plaintiff has not produced expert opinion concluding that Dr. Barraza's interpretation of the CT scans fell below the standard of care for a radiologist. The expert witness evidence shows that the CT scans could reasonably be interpreted to show evidence of an aortic dissection even if that interpretation later proved to be wrong. Thus, the plaintiff has failed to show that she would be able to carry her burden of proving at trial that Dr. Barraza's conduct fell below the applicable standard of care. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the district court's summary judgment in favor of the defendants, Dr. John Barraza, Physicians Management Company of Monroe, Inc. d/b/a Radiology Associates and St. Paul Fire and Marine Insurance Company, is affirmed. Costs of this appeal are assessed to the appellant, Maria Charlotte Lowrey.
AFFIRMED.